UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

|  |  |
|---|---|
| HUMANMADE,<br><br>        Plaintiff,<br><br>v.<br><br>SFMADE, et al.,<br><br>        Defendants. | Case No. 23-cv-02349-HSG  (PHK)<br><br>**ORDER RESOLVING DISCOVERY DISPUTE REGARDING SEARCH TERMS, REQUESTS FOR PRODUCTION, AND INTERROGATORIES DIRECTED TO DEFENDANT SFMADE**<br><br>Re: Dkt. 63 |

        This case has been referred to the undersigned for discovery.  *See* Dkt. 66.  Now before the Court is a joint letter brief regarding a dispute between the Plaintiff Humanmade and Defendant SFMade concerning search terms for Defendant's collection of documents responsive to Plaintiff's document requests and a related dispute regarding SFMade's interrogatory responses.  [Dkt. 63].  The Court finds the dispute suitable for resolution without oral argument.  Civil L.R. 7-1(b).

**LEGAL STANDARD**

        Federal Rule of Civil Procedure 26(b)(1) provides that "[p]arties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case."  Information need not be admissible to be discoverable.  *Id.*  Relevancy, for purposes of discovery, is broadly defined to encompass "any matter that bears on, or that reasonably could lead to other matter that could bear on, any issue that is or may be in the case."  *In re Williams-Sonoma, Inc.*, 947 F.3d 535, 539 (9th Cir. 2020) (quoting *Oppenheimer Fund, Inc. v. Sanders*, 437 U.S. 340, 350-51 (1978)); *see also In re Facebook, Inc. Consumer Privacy User Profile Litig.*, No. 18-MD-2843 VC (JSC), 2021 WL 10282215, at *4 (N.D. Cal.

Sept. 29, 2021) ("Courts generally recognize that relevancy for purposes of discovery is broader than relevancy for purposes of trial.") (alteration omitted).

While the scope of relevance is broad, discovery is not unlimited. *ATS Prods., Inc. v. Champion Fiberglass, Inc.*, 309 F.R.D. 527, 531 (N.D. Cal. 2015) ("Relevancy, for purposes of discovery, is defined broadly, although it is not without ultimate and necessary boundaries."). Information, even if relevant, must be "proportional to the needs of the case" to fall within the scope of permissible discovery. Fed. R. Civ. P. 26(b)(1). The 2015 amendments to Rule 26(b)(1) emphasize the need to impose reasonable limits on discovery through increased reliance on the common-sense concept of proportionality: "The objective is to guard against redundant or disproportionate discovery by giving the court authority to reduce the amount of discovery that may be directed to matters that are otherwise proper subjects of inquiry. The [proportionality requirement] is intended to encourage judges to be more aggressive in identifying and discouraging discovery overuse." Fed. R. Civ. P. 26 advisory committee's note to 2015 amendment; *see also* FREDRIC BELLAMY, ANNOTATED MANUAL FOR COMPLEX LITIGATION FOURTH § 11.41, at 69 (Federal Judicial Center 2023) (Rule 26(b)(1)'s "underlying principle of proportionality means that even in complex litigation, discovery does not require leaving no stone unturned"). In evaluating the proportionality of a discovery request, a court should consider "the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to the information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit." Fed. R. Civ. P. 26(b)(1).

The party seeking discovery bears the burden of establishing that its request satisfies the relevancy requirements under Rule 26(b)(1). *La. Pac. Corp. v. Money Mkt. 1 Inst. Inv. Dealer*, 285 F.R.D. 481, 485 (N.D. Cal. 2012). The resisting party, in turn, has the burden to show that the discovery should not be allowed. *Id.* The resisting party must specifically explain the reasons why the request at issue is objectionable and may not rely on boilerplate, conclusory, or speculative arguments. *Id.*; *see also Blankenship v. Hearst Corp.*, 519 F.2d 418, 429 (9th Cir. 1975) ("Under the liberal discovery principles of the Federal Rules defendants were required to

carry a heavy burden of showing why discovery was denied.").

The Court has broad discretion and authority to manage discovery. *U.S. Fidelity & Guar. Co. v. Lee Inv. LLC*, 641 F.3d 1126, 1136 n.10 (9th Cir. 2011) ("District courts have wide latitude in controlling discovery, and their rulings will not be overturned in the absence of a clear abuse of discretion."); *Laub v. U.S. Dep't of Int.*, 342 F.3d 1080, 1093 (9th Cir. 2003). As part of its inherent discretion and authority, the Court has broad discretion in determining relevancy for discovery purposes. *Surfvivor Media, Inc. v. Survivor Prods.*, 406 F.3d 625, 635 (9th Cir. 2005) (citing *Hallett v. Morgan*, 296 F.3d 732, 751 (9th Cir. 2002)).

Moreover, the Court's discretion extends to crafting discovery orders that may expand, limit, or differ from the relief requested. *See Crawford-El v. Britton*, 523 U.S. 574, 598 (1998) (holding trial courts have "broad discretion to tailor discovery narrowly and to dictate the sequence of discovery"). For example, the Court may limit the scope of any discovery method if it determines that "the discovery sought is unreasonably cumulative or duplicative, or can be obtained from some other source that is more convenient, less burdensome, or less expensive." Fed. R. Civ. P. 26(b)(2)(C)(i).

## ANALYIS

### A. Dispute Regarding Seven Search Terms for ESI

Plaintiff Humanmade spends much of its argument describing the background of this dispute, including allegations that SFMade has delayed producing documents responsive to Humanmade's requests. [Dkt. 63 at 1-2]. Humanmade complains that SFMade's efforts to search for and collect responsive documents was deficient, and that SFMade's recent engagement of an eDiscovery vendor has resulted in further delays because the Parties are unable to reach agreement on all the search terms to be used to search for responsive documents. *Id.*

SFMade confirms that it has engaged an eDiscovery vendor and represents that the Parties have agreed on the five custodians whose electronic files are to be searched. *Id.* at 4. SFMade indicates that the Parties have agreed on "several" search terms for the ESI database but dispute seven search terms because they yield too high a hit count, thus making review of documents based on these seven search terms overly burdensome. *Id.* Contrary to Humanmade's

representations to the Court that SFMade has produced no documents since April, *id.* at 3, SFMade represents to the Court that SFMade has produced approximately 14,000 documents to Humanmade in two productions following the retention of its eDiscovery vendor (which according to SFMade resulted from searching approximately 30% of the documents agreed to be searched using the agreed upon search terms).  *Id.* at 4.

Plaintiff further argues that Defendant has refused to disclose hit counts resulting from the seven disputed search terms and refuses "to provide an opportunity for Humanmade to propose alternative terms." *Id.* at 3.  Contrary to Plaintiff's representations, SFMade argues that "Humanmade has been unwilling to engage in a discussion of modifying the search terms following the search being conducted." *Id.* at 5.

There is no dispute here over whether the document requests (and thus the seven search terms directed to the document requests) lack relevance.  Rather, the dispute is whether running these seven additional search terms is or is not overly burdensome because they yield an excessive number of allegedly irrelevant document "hits."  Neither Party has submitted all seven proposed search terms to the Court, although SFMade has provided one of the proposed search terms as an example.  *Id.*

Because there is no dispute over relevance here, the Court **FINDS** that requiring some number of additional search terms are directed to relevant evidence.  The Court further **FINDS** that requiring SFMade to run additional search terms, if appropriately drafted, and produce responsive ESI documents and materials would be proportional to the needs of the case.

The Court is disappointed that the Parties appear to have failed at the kind of communication during meet and confers which is expected and necessary for effective resolution of discovery issues.  The fact that the Parties have made drastically different representations to the Court about who said what or who refused to provide information is equally disappointing. Experienced counsel should be capable of and, indeed, are expected to resolve ESI and search term disputes typically without the need for Court intervention, because eDiscovery issues are common in the modern era and members of the bar are expected to be familiar with and capable of competently working through these kinds of issues.

United States District Court
Northern District of California

1    The Court is also disappointed that SFMade has apparently failed to share statistics on hit

2    counts for the seven disputed search terms transparently with Plaintiff.  "Parties are both

3    encouraged and expected to timely share eDiscovery statistics such as hit number results when

4    they have a dispute over eDiscovery issues such as search terms."  *In re Social Media Adolescent*

5    *Addiction/Personal Injury Products Liability Litigation*, 2024 WL 3225909 at *3 (N.D. Cal. June

6    28, 2024).  Further, the Court is disappointed that Plaintiff has apparently failed to propose any

7    alterations to, limitations on, or modifications to any of the seven disputed search terms when

8    informed that they yield an excessive and unreasonably high number of hits (regardless of the

9    details of the statistics).  "The Court is disappointed that all counsel here, who are expected to

10   negotiate reasonably and work in good faith in resolving discovery disputes, were unable to

11   propose and negotiate search terms for these documents."  *Doe v. Kaiser Found. Health Plan, Inc.*,

12   2024 WL 3225904 at *3 (N.D. Cal. June 28, 2024).

13   Because counsel for both Parties have failed to properly negotiate over the seven disputed

14   search terms, the Parties have forced the Court to **ORDER** counsel to undertake the normal type

15   of search term negotiation and resulting ESI production that they should have done without the

16   need for Court intervention.  *See id.*  The Court has discretion and authority to order discovery and

17   discovery dispute relief different from what the Parties seek.  *Crawford-El*, 523 U.S. at 598.

18   Accordingly and in the exercise of the Court's discretion, the Court **ORDERS** as follows:

19   **On or before close of business on Friday July 12, 2024**, Defendant **SHALL** provide to

20   Plaintiff the hit count statistics resulting from running each of the seven disputed search terms

21   against Defendants database of collected ESI.  **On or before close of business on Monday July**

22   **15, 2024**, Plaintiff **SHALL** provide Defendant with a set of up to seven modified search terms to

23   replace the original seven search terms, where the modifications shall be made for the purpose of

24   reducing the hit count to address overbreadth and undue burden.  Plaintiff is on notice of this

25   deadline and is well advised to begin preparing modified search term proposals without delay and

26   prior to receiving the hit count statistics.  **On or before Thursday July 18, 2024,** Defendant shall

27   run these proposed modified search terms (or any agreed-upon modifications thereto) against

28   SFMade's collected ESI database and shall report on the document hit count statistics to Plaintiff.

1   As the Party in possession of the documents and ESI database from which discovery is sought, it

2   is generally expected and customary that SFMade should run test searches using the opposing

3   party's proposed search terms to see if they return a reasonable and mutually agreeable hit count

4   (whether too high or too low).  Defendant is on notice of this deadline and is well advised to

5   prepare and confer with its eDiscovery vendor to be ready to run the search term statistics

6   expeditiously.

7          The Court **ORDERS lead trial counsel** for the Parties to meet and confer either in person

8   (if located within 100 miles of each other) or by videoconference (if not located within 100 miles

9   of each other) in order to discuss and negotiate reasonably and in good faith regarding whether any

10  further modifications to the search terms are reasonably warranted in light of the document hit

11  count statistics.  The Parties shall meet and confer promptly after the report of the hit counts from

12  the revised search terms, and shall propose, counter-propose, and negotiate any such reasonable

13  modifications and finalize the search terms **on or before Monday July 22, 2024**.  Both lead trial

14  counsel are on notice of this deadline and are well advised to promptly discuss scheduling

15  mutually available times and dates to complete the meet and confer within the time frame required

16  by this Order, instead of waiting until after the hit count is reported to schedule the meet and

17  confer.

18         The Parties are **ORDERED** to timely share eDiscovery statistics such as hit number results

19  when they have a dispute over eDiscovery issues such as search terms (*i.e.,* like the current

20  dispute), and to timely and promptly propose and counterpropose modifications to search

21  terms.  Further, in the meet and confers, the Parties are both encouraged and expected to have

22  persons involved or on-call who are knowledgeable about the technical operations and features of

23  eDiscovery systems, including (where appropriate) persons knowledgeable from their respective

24  eDiscovery service providers, to expedite discussions and disputes over technical feasibility

25  issues.

26         If the Parties are unable to finalize the search terms on or before July 22, 2024, then the

27  Partis **SHALL** file a Joint Notice by close of business on July 22, 2024, to inform the Court that

28  there remain unresolved disputes regarding the search terms and a summary of the dispute.  The

United States District Court
Northern District of California

1   Notice shall be no longer than three (3) pages evenly divided between the Parties.  Further, if the

2   Parties are unable to resolve the search terms, the Court **ORDERS** that **lead trial counsel and**

3   **either the General Counsel or CEO** of each Party **SHALL** all appear for an in-person hearing in

4   Courtroom F on the 15th floor of the San Francisco courthouse for a hearing on this matter on

5   Tuesday July 23, 2024 at 12:00 pm.  On the morning of July 23 prior to the hearing, the Parties

6   **SHALL** file with the Court (and submit a copy to PHKPO@cand.uscourts.gov) a chart setting

7   forth the seven disputed search terms and, for each such remaining disputed term, the competing

8   final modified search term proposed by each Party, arranged in three columns labeled

9   appropriately.  **No remote appearance shall be allowed.  Failure to attend this hearing, should**

10  **it be necessary, shall result in any appropriate sanctions.**  The Parties can obviate the need for

11  this hearing by appropriately meeting and conferring to finalize the search terms.

12          Once the search terms are finalized, SFMade shall run the finalized search terms against

13  SFMade's ESI database and produce the responsive documents resulting from that search on a

14  rolling basis **starting no later than _Friday July 26, 2024_**.  SFMade shall complete any such

15  production **by Wednesday July 31, 2024**.  Defendant is on notice of this deadline and is well

16  advised to prepare and confer with its eDiscovery vendor to be ready to run the finalized search

17  terms and complete production timely.

18          Given the Fact Discovery cutoff date, and in order to expedite Defendant's production of

19  ESI and obviate the need for delay caused by privilege reviews prior to production (and disputes

20  over privilege/work product issues), the Court hereby further **ORDERS** the Parties to employ the

21  following privilege/clawback procedures for eDiscovery:

22          If, after production of any ESI, any produced ESI material are subsequently alleged by any

23  Party to be subject to any applicable privilege (or if Plaintiff contends that production of any

24  specified ESI materials could constitute a waiver of any applicable privilege), then such produced

25  ESI documents **SHALL BE DEEMED** to have been inadvertently produced and should not have

26  been produced in the first instance, and **no waiver** shall be found.  *See* Dkt. 45 at ¶ 11.

27  Accordingly, for any such ESI materials, Defendant shall promptly serve a "Clawback Notice"

28  which shall include: (i) the Bates range of the document(s) or material(s) at issue, (ii) a privilege

log listing the document(s) or item(s) produced, and (iii) a new copy of the document(s) or material(s) (utilizing the same Bates number as the originally produced document(s) or material(s)) with the privileged or protected material redacted (if Defendant contends that only a portion of the document contains privileged or otherwise protected material). If Defendant contends that the entire document is privileged or otherwise protected, then Defendant shall provide a slip sheet with the original Bates number(s) noting that the entire document is being withheld to replace the clawed back document(s) or page(s).

Upon receipt of a Clawback Notice, all such documents or other materials or information identified therein, and all copies thereof (including transcriptions, notes, or other documents which extract, memorialize, summarize, or copy information from any such clawed back documents), **shall be** promptly collected by Plaintiff, their counsel, counsel's staff, and experts or consultants (and those under their control), and those copies shall be promptly sequestered and either (at Plaintiff's option) returned to Defendant or destroyed by Plaintiff's counsel, who shall serve promptly thereafter a certificate of destruction signed under oath by counsel for Plaintiff.  No Party shall use any such clawed back document, material, or information therein for any purpose, until further Order of the Court.  Plaintiff shall attempt, in good faith, to retrieve, sequester, and either return or destroy all copies of the clawed back document(s) in electronic format promptly after receiving a Clawback Notice.

Plaintiff may challenge an assertion of privilege with respect to ESI document(s) listed on Defendant's privilege log.  The Parties shall follow the Court's Standing Order for Discovery and the dispute resolution procedures therein for raising any such challenges with the Court, if the Parties are unable to resolve any such disputes through negotiation.  The Parties are encouraged to cooperate reasonably in resolving any such disputes through the meet and confer process.

Additionally, again in light of the Fact Discovery cutoff date and in order to expedite Defendant's production of ESI and obviate the need for delay caused by individualized confidentiality designations under the Protective Order, the Court further **ORDERS** that for the ESI produced as required herein, Defendant may designate such ESI at the highest level of confidentiality under the Protective Order as a default.  After completion of the ESI production,

United States District Court
Northern District of California

Defendant shall take reasonably prompt steps to re-designate ESI at the appropriate level of confidentiality under the Protective Order, and Plaintiff may bring to Defendant's attention reasonable requests for re-designation of specified documents.  The Parties shall cooperate reasonably on re-designating confidentiality levels of ESI, particularly where the face of a document demonstrates that a particular document deserves either lower confidential designation or no confidential designation at all (such as webpage printouts, advertisements, and other publicly available documents).

The Parties shall follow the Protective Order at ¶ 6.3 and the dispute resolution procedures in  the Court's Standing Order for Discovery for raising disputes over confidentiality re-designations with the Court, if the Parties are unable to resolve any such disputes through negotiation. The Parties shall cooperate reasonably in resolving any such disputes through the meet and confer process.

In light of the ESI production schedule set forth herein, the Court further **ORDERS** the Parties to meet and confer promptly to discuss and negotiate a reasonable schedule for completing depositions of fact witnesses, including good faith cooperation on agreeing to take depositions after the fact discovery cut-off date and agreeing (where necessary) to double track depositions. The Court **ORDERS** the Parties to file a Joint Discovery Management Status Report on **July 29, 2024**, to report on the status of the ESI document production and the discussions for scheduling the depositions.

The Parties **SHALL NOT** alter any of these deadlines absent a demonstration to the Court that they discussed scheduling issues in good faith through reasonable meet and confers.  Any proposed reasonable extensions or modifications of these deadlines **shall** be submitted to the Court by Stipulation and proposed Order demonstrating their good faith and reasonable meet and confers, which the Court may, in its discretion, modify, reject, or approve.

The Court is disappointed at what appears to be a failure by the Parties' counsel to effectively engage in the meet and confer process for resolving discovery disputes.  The Parties and their counsel are again admonished to review and comply with the Court's Guidelines for Professional Conduct at Section 9 on Discovery, this Court's Discovery Standing Order, and the

Federal Rules of Civil Procedure, particularly Rules 1 and 26. *See* Fed. R. Civ. P. 26 advisory committee's note to 2015 amendment ("It is expected that discovery will be effectively managed by the parties in many cases."); Dkt. 68.

Able and experienced counsel, particularly lead trial counsel for the Parties here, are expected to and should know better how to resolve disputes of the kind raised herein and how to resolve them efficiently and without undue delay. If the Parties demonstrate an inability to resolve discovery disputes in a reasonable manner consistent with Rules 1 and 26, as well as this Court's directives and Orders, the Court will consider imposing additional meet and confer procedures for future discovery disputes, including but not limited to requiring any counsel directly involved in any of the meet and confers to meet and confer **in person**; requiring **in-person** meet and confers **by lead trial counsel** regardless of lead counsels' geographic proximity; requiring meet and confers to take place in person at the San Francisco courthouse or other location; requiring in-house counsel or Party representatives (including officers and/or directors) to attend all meet and confers; the imposition of appropriate sanctions (including monetary sanctions) for failure to adequately and reasonably meet and confer; and/or any other sanction or other procedure the Court deems appropriate in the circumstances.

**B. Dispute Regarding Defendant's Interrogatory Responses**

Plaintiff's portion of the letter brief argues briefly that Defendant's interrogatory responses are deficient. [Dkt. 63 at 3]. However, Plaintiff does not explain what the interrogatories are seeking, what the deficiencies are, or how or why supplementing the response to the interrogatories is not duplicative of depositions to be taken. Plaintiff devotes less than three sentences total to this issue. This is insufficient to merit relief.

Because the Party seeking relief in a discovery dispute has the burden of demonstrating need for the relief, and because here Plaintiff has failed to explain what the dispute consists of (other than a generalized, boilerplate complaint that the interrogatory responses are somehow deficient), Plaintiff's motion for further supplemental interrogatory responses is **DENIED**.

//

//

United States District Court
Northern District of California

C.  **Conflicting Representations to the Court**

As noted above, the Parties provided contradictory representations of what happened during the meet and confers in the letter brief.  While the Court assumes counsel are aware of and abide by their obligations under Fed. R. Civ. P. 11 when making such representations, the proper administration of justice and the effective supervision of discovery in this matter requires the Court to take steps to inquire when such discrepancies arise.

Accordingly, **by no later than Monday July 15, 2024**, lead trial counsel for Plaintiff shall file with the Court a declaration under oath explaining all bases for Plaintiff's representations to the Court that: (1) "SFMade has only produced approximately ***one hundred*** documents (excluding duplicates and un-readable machining software files)[,]" dkt. 63 at 1, (2) "As of the date of this letter, SFMade still has not produced ***any*** additional documents since April[,]" dkt. 63 at 3, (3) "However, SFMade flatly refuses to … provide an opportunity for Humanmade to propose alternative terms[,]" dkt. 63 at 3, and (4) explaining how Plaintiff's citation to Ex. 9 at 1 supports the statement that "SFMade flatly refuses to provide an opportunity for Humanmade to propose alternative terms," dkt. 63 at 3.

Concurrently, **by no later than Monday July 15, 2024**, lead trial counsel for Defendant shall file with the Court a declaration under oath explaining all bases for Defendant's representations to the Court that: (1) "Humanmade has been unwilling to engage in a discussion of modifying the search terms following the search being conducted[,]" dkt. 63 at 5, (2) "As of today, SFMade has made two productions to Humanmade following the retention of [eDiscovery vendor] Consilio[,]" dkt. 63 at 4, and (3) "SFMade has produced roughly 14,000 documents to Humanmade[,]" dkt. 63 at 4.

//

//

//

//

//

//

United States District Court
Northern District of California

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

United States District Court
Northern District of California

## CONCLUSION

This Order **RESOLVES** Dkt. 63.  To the extent the Parties request to be relieved of any of the deadlines or procedures herein, they shall submit any such requests by Stipulation and [Proposed] Order and shall therein explain their good faith and reasonable bases for such jointly requested relief.

**IT IS SO ORDERED.**

Dated:  July 10, 2024

_____

PETER H. KANG
United States Magistrate Judge